UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHEN LOCKWOOD,

                Plaintiff,

v.                                                    6:16-CV-0648
                                                       (CFH)

COMM'R OF SOC. SEC.,

                Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICES OF STEVEN R. DOLSON      STEVEN R. DOLSON, ESQ.
126 North Salina Street, Suite 3B
Syracuse, New York 13202
Counsel for Plaintiff

U.S. SOCIAL SECURITY ADMIN.            ANDREEA L. LECHLEITNER, ESQ.
Office of Reg'l Gen Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278
Counsel for Defendant

**CHRISTIAN F. HUMMEL,**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Stephen Lockwood ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. § 405(g), are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 9, 11.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied, and Defendant's motion for judgment on the pleadings is granted. The Commissioner's decision denying Plaintiff's disability benefits is affirmed, and Plaintiff's Complaint is dismissed.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1964, making him 47 years old at the alleged onset date and 50 years old at the date of the ALJ's decision. (T. 33)[1] Plaintiff reported graduating from high school. (*Id.*). The ALJ found he has past relevant work as a corrections officer, landscape laborer, and forklift operator. (*Id.* at 23). Generally, Plaintiff alleges disability consisting of injuries to his neck, lower back, bilateral hands, and shoulder.

### B. Procedural History

Plaintiff applied for Disability Insurance Benefits on July 26, 2013, alleging disability beginning November 11, 2011. Plaintiff's application was initially denied on October 8, 2013, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Plaintiff appeared at a video hearing before ALJ Lisa B. Martin on June 2, 2014. (T. 28-43). On October 27, 2013, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act. (*Id.* 17-24.) On May 3, 2016, the Appeals Council granted Plaintiff's request for review, adopting the majority of the ALJ's findings and rationale, but adding their own specific findings to support the presence of a substantial number of jobs that Plaintiff could perform when considering his change in age category during the relevant period. (*Id*. 1-8.)

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following seven findings of fact and conclusions of law. (T. 19-24.) First, the ALJ found that Plaintiff was insured for benefits under Title II of the Social Security Act until December 31, 2016. (T. 19.) Second, the ALJ

---

[1] The Administrative Transcript is found at Dkt. No. 8. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 11, 2011. (*Id*.) Third, the ALJ found that Plaintiff's cervical spine disorder, left shoulder disorder, and bilateral carpal tunnel disorder are severe impairments. (*Id*.) Fourth, the ALJ concluded that Plaintiff's severe impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (*Id*.) In so concluding, the ALJ considered Listings 1.00 (musculoskeletal system) and 11.00 (neurological disorders). (*Id.*) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform

> a full range of light work as defined in 20 CFR 404.1567(b), except the claimant needs a brief (one to two minute) change of position opportunity as often as every 45 minutes and is limited to lifting/carrying 15 pounds on an occasional basis. The claimant must avoid all climbing ladders, ropes, and scaffolding, and is limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. Additionally, the claimant must avoid all overhead reaching tasks and constant upper extremity reaching, handling, and fingering tasks as well as avoid all dangerous work hazards (including unprotected heights and exposed machinery). Overall, the claimant is unable to perform full neck rotation activities.

(T. 19-20.) Sixth, the ALJ found that Plaintiff has past relevant work, but is unable to perform any of those jobs with the above limitations. (T. 23.) Finally, the ALJ determined that Plaintiff is not disabled at Step Five because he retains the ability to perform other work in the national economy as a retail clerk, new account clerk, and sub-assembler of small electrical parts. (T. 23-24.)

### D. The Appeals Council's Decision

The Appeals Council granted review of Plaintiff's claim due to the ALJ's failure to discuss and account for Plaintiff's change in age category from a younger individual to an individual closely approaching advanced age during the period at issue. (T. 4-5.) The Appeals

3

Council adopted the ALJ's findings related to Steps One through Four of the sequential evaluation, but modified the finding at Step Five, indicating that Plaintiff was not disabled either before or after the age change because he remained able to perform the light and sedentary occupations identified by the vocational expert and the ALJ. (T. 5-7.) The Appeals Council therefore concluded that Plaintiff had not been disabled at any time from his alleged onset date through October 27, 2014, the date of the ALJ's decision. (T. 7.)

### E. Parties' Arguments

Generally, Plaintiff asserts two arguments in support of his motion for judgment on the pleadings. First Plaintiff argues that the ALJ committed harmful error in failing to address and resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("D.O.T."). (Dkt. No. 9, at 5-7 [Pl. Mem. of Law].) More specifically, Plaintiff argues that there was a conflict between a limitation for avoidance of all overhead reaching and the specification in the Selected Characteristics of Occupations ("S.C.O.") that the jobs identified by the vocational expert required the ability to reach frequently. (*Id*.) Plaintiff also argues that the ALJ failed to solicit an explanation for the inconsistency between the RFC for lifting and carrying a maximum of 15 pounds occasionally with the definition of light work, which he asserts requires the ability to lift and carry up to 20 pounds occasionally. (Dkt. No. 9, at 7 [Pl. Mem. of Law].)

Second, Plaintiff argues that the ALJ committed harmful error in failing to consider or account for a statement from Nurse Practitioner Carmelita Woods, N.P., that Plaintiff had a 50 percent impairment of the right hand and 25 percent impairment of the left hand. (Dkt. No. 9, at 8 [Pl. Mem. of Law].)

4

Generally, Defendant asserts two arguments in support of her motion for judgment on the pleadings. In response to Plaintiff's first argument, Defendant argues that there was no conflict that needed to be resolved between the vocational expert's testimony and the D.O.T. and S.C.O. (Dkt. No. 11, at 15-21 [Def. Mem. of Law].) More specifically, Defendant argues that the vocational expert's testimony that she relied on her experience when forming her opinion provided a sufficient explanation as to any deviation from the D.O.T. and S.C.O. (Dkt. No. 11, at 16-17 [Def. Mem. of Law].) Defendant also argues that there was no conflict regarding overhead reaching despite the fact that the D.O.T. does not distinguish between overhead reaching and reaching in other directions because the narrative descriptions of the identified jobs do not indicate that overhead reaching is required in these jobs. (Dkt. No. 11, at 18-19 [Def. Mem. of Law].) Lastly, Defendant argues that, even if these conflicts did exist, the vocational expert provided an example of a sedentary job that would not be precluded by the conflicts, and so any errors would at most be harmless. (Dkt. No. 11, at 20-21 [Def. Mem. of Law].)

In response to Plaintiff's second argument, Defendant argues that the ALJ did not ignore Nurse Practitioner Woods' assessment related to manipulative limitations because she specifically indicated that she considered all the evidence in the record, and because she specifically cited to portions of other treatment notes in the same exhibit where Nurse Practitioner Wood's assessment is located. (Dkt. No. 11, at 6 [Def. Mem. of Law].) Defendant also argues that there is no indication that Nurse Practitioner Woods' assessment conflicts with the RFC, and that her statement is vague. (Dkt. No. 11, at 6-7 [Def. Mem. of Law].) Lastly, Defendant argues that Plaintiff has not shown why the ALJ would have been required to rely on Nurse Practitioner Woods' assessment over the other evidence in the record. (Dkt. No. 11, at 7-15 [Def. Mem. of Law].)

5

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)). The substantial evidence standard is "a very deferential standard of review . . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks omitted). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). However, if the correct legal standards were applied and the ALJ's finding is supported by supported by substantial evidence, such finding must be sustained, "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).

## B. Sequential Evaluation

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step sequential evaluation proceeds as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Schweiker*, 675 F.2d at 467, *accord, McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III. ANALYSIS

### A. Conflicts Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles

Plaintiff argues that the ALJ committed reversible error insofar as she failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles in violation of SSR 00-4p. Dkt. No. 9 at 5-7. Specifically, plaintiff argues that SSR 00-4p requires, where there exists an "apparent unresolved conflict" between a vocational expert's testimony and the DOT, an ALJ set forth a "reasonable explanation" for the conflict prior to relying on the vocational expert. (*Id.*)[2] The Court concludes, for the reasons stated within defendants' memorandum of law, that no such reversible error occurred. The Court adds the following additional analysis.

"An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion'" and the hypothetical "accurately reflect[s] the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)); citing *Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)). However, if there is an apparent conflict between the vocational expert's testimony and the D.O.T., the ALJ is required to obtain a reasonable explanation for the conflict. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (noting that it is the ALJ's responsibility to ask if vocational expert testimony conflicts with the information

---

[2] SSR 00-4p provides:

> before relying on VE or VS evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and Explain in the determination or decision how any conflict that has been identified was resolved.

SSR 004-p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704 (S.S.A.).

provided in the Dictionary of Occupational Titles and, if it does conflict, obtain a reasonable explanation for the apparent conflict); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 446 (2d Cir. 2012) (noting that "a VE whose evidence conflicts with the DOT must provide a 'reasonable explanation' to the ALJ for the conflict"); *Brodbeck v. Astrue*, No. 5:05-CV-0257, 2008 WL 681905, at *9 (N.D.N.Y. Mar. 7, 2008) ("If a conflict exists between the evidence provided by the expert and the DOT, the ALJ must determine whether the expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT.").

Regarding Plaintiff's assertion that there was an unexplained conflict between the limitation for lifting and carrying 15 pounds occasionally and the Agency's conclusion that he could perform light work, applicable legal precedent does not support the existence of a conflict. Although Plaintiff asserts that "[t]he regulatory definition of Light work requires lifting 20 pounds occasionally and 10 pounds frequently," this assertion is not consistent with the actual definition of light work. (Dkt. No. 9, at 7 [Pl. Mem. of Law].) Rather, the regulations define light work as "lifting *no more* than 20 pounds at a time with frequent lifting and carrying objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); SSR 83-10, 1983 WL 31251, at *5 (emphasis added). Therefore, contrary to Plaintiff's argument, light work does not necessarily require that an individual be able to lift up to 20 pounds, only that he must not be required to lift over 20 pounds in the course of performing that work. SSR 83-10 further indicates that "[e]ven though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing–the primary difference between sedentary and light jobs." SSR 83-10, 1983 WL 31251, at *5. Given the definition of light work and the indication in SSR 83-10 that some light jobs do not require lifting much weight, there was no apparent conflict between the RFC restricting Plaintiff to lifting and carrying 15 pounds

9

occasionally and the light-level jobs identified by the vocational expert. Additionally, the ALJ specifically asked the vocational expert whether a limitation to lifting and carrying a maximum of 15 pounds occasionally would impact performance of the identified jobs, and the vocational expert responded that none of those jobs would require more strenuous lifting and carrying. (T. 41.) The ALJ was entitled to rely on this opinion. As there was no inconsistency to reconcile on this matter, there was also no error.

Plaintiff also argues that there was a conflict between the vocational expert's testimony and the D.O.T. related to the limitation for avoidance of all overhead reaching because the identified jobs require a greater ability to reach generally and the D.O.T. does not differentiate between reaching overhead and reaching in other directions. (Dkt. No. 9, at 5-7 [Pl. Mem. of Law].) Assuming without deciding that there was a genuine conflict between the D.O.T. specifications for reaching and the limitation for avoidance of reaching overhead, such a conflict was reconciled because the vocational expert's testimony indicates that she based her opinion on her own experience observing the performance of the identified jobs.[3]

On the issue of reaching, the vocational expert testified that all the identified jobs required frequent reaching and would not require "moving all the way from right to the left." (T. 40-41.) When questioned specifically whether her testimony had been consistent with the D.O.T., the vocational expert answered, "[i]t is, but the D.O.T. does not address the changing

---

[3] It is worth noting that multiple courts, including this one, have previously determined that "when the D.O.T. does not specifically provide for a particular restriction, there is no 'actual conflict' between the VE's testimony and the D.O.T., and that before the VE is asked to 'resolve a conflict,' one must actually exist." *Reisinger v. Comm'r of Soc. Sec.*, No. 7:16-CV-0428, 2017 WL 2198965, at *10 (N.D.N.Y. May, 18, 2017) (collecting cases stating this proposition, including *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 319 (W.D.N.Y. 2013), wherein the Western District of New York found there was no conflict between the D.O.T. and a limitation on overhead reaching because the D.O.T. is silent regarding overhead reaching). However, because the evidence shows that the vocational expert provided sufficient explanation for this Court to glean the basis of her testimony, whether the overhead reaching restriction created an actual conflict need not be decided here to resolve the ultimate issue whether remand is warranted.

10

positions and the narrowing these jobs to, first of all best work positions which could be performed briefly while standing and also other jobs that I've observed that one can perform during a change of position without stopping performing the task." (*Id.* at 41.) Although neither of these answers directly addresses the issue of overhead reaching specifically, they do provide an indication that the vocational expert was familiar with the specifics of how the identified jobs were performed based on her observation of people performing those jobs. For instance, the vocational expert was able to discuss in some detail the extent and nature of the horizontal reaching typically involved in these jobs, which suggests she was familiar with how these jobs were performed in a normal work setting. Between this statement related to reaching and the vocational expert's more explicit statement that she had knowledge of the impact of a sit/stand option based her observations of people performing these jobs, it is possible to reasonably infer that the vocational expert's testimony as a whole was based on, or informed by, her own experiences and observations of these jobs, including her testimony that Plaintiff would be able to perform them despite a limitation for avoidance of overhead reaching.

Contrary to Plaintiff's argument, the mere inclusion of a limitation for overhead reaching, or any other apparent conflict, does not automatically warrant remand; rather, the question is one that must be made based on the totality of the factual circumstances. This is not a case where the ALJ failed to solicit explanations regarding potential conflicts, or where the ALJ merely asked a single generic question in a half-hearted attempt to only nominally meet his duty under SSR 00-4p. *See Robles v. Comm'r of Soc. Sec.,* No. 5:15-CV-1359, 2016 WL 7048709, at \*6 (N.D.N.Y. Dec. 5, 2016) (remanding where the ALJ asked the vocational expert a "catch-all" question - whether there was "any conflict between her testimony and the occupational information contained in the D.O.T." - finding that this "catch-all" question was "insufficient to satisfy the

ALJ's affirmative duty to resolve any conflicts pursuant to SSR 00-4p") (internal citations omitted); *Bevens v. Colvin*, No. 5:13-CV-0470, 2015 WL 57500083, at *10 (N.D.N.Y. Sept. 30, 2015) (finding that the ALJ did not adequately resolve an apparent conflict related to reaching where he merely asked a "catch-all" question regarding consistency with the D.O.T., to which the vocational expert responded there were no inconsistencies). Rather, the hearing transcript containing the vocational expert's testimony shows that the ALJ did make attempts to inquire as to the potential for conflicts and ensure any present inconsistencies were resolved. (T. 40-42.) Notably, unlike in *Robles* and *Bevens*, which plaintiff cites in support of his argument that remand is warranted, Dkt. No. 9 at 6-7, the vocational expert in this case did note that there were inconsistencies and indicated that her personal experience observing the identified jobs formed the bases for her testimony that Plaintiff remained able to perform those jobs despite some of those inconsistencies. (*Id.*) As the vocational expert's answers to these questions indicate her testimony was based on her personal knowledge of the identified jobs, any such inconsistencies with the D.O.T. were explained and remand is therefore not warranted.[4]

For all of the above reasons, the ALJ appropriately sought explanations for any potential conflicts that existed as required by SSR 00-4p, and remand is not required on this basis.

### B. Nurse Practitioner Woods's Opinion

Plaintiff argues that the ALJ committed reversible error by failing to explicitly discuss and weigh Nurse Practitioner Woods' opinion. The Court concludes, for the reasons stated in defendants' memorandum of law, that no reversible error occurred. First, the Agency has

---

[4] Additionally, as Defendant noted in her memorandum, the written descriptions of the three identified jobs in the D.O.T. do not appear to suggest that overhead reaching in particular would be generally required in any of these jobs. (Def. Mem. of Law at 18-19 (citing *Burgess v. Colvin*, No. 13-CV-6177, 2014 WL 1875360, at *13 (W.D.N.Y. May 9, 2014), in which the Western District of New York relied in part on the D.O.T. descriptions of jobs identified by the vocational expert that did not appear to indicate the need to perform overhead tasks); *see also D.O.T.*, at Nos. 295.357-018, 205.367-014, 729.684-054 (Dept. of Labor, 1991).

conceded that opinions from sources not considered "medically acceptable sources"[5] are still "'important and should be evaluated on key issues such as impairment severity and functional effects.'" *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (quoting *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009)). Thus, the ALJ is required to "consider 'evidence from other sources to show the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work.'" *Saxon*, 781 F. Supp. 2d at 104 (alteration in the original) (quoting 20 C.F.R. § 404.1513(e)). "In weighing the opinions of 'other sources,' the ALJ must use the same factors [as] for the evaluation of the opinions from 'acceptable medical sources.'" *Saxon*, 781 F. Supp. 2d at 104 (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)). The factors for weighing opinion evidence include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).[6]

On June 5, 2013, NP Woods stated in a treatment note that Plaintiff had "50% impairment of the right hand and 25% impairment of the left." (T. 247.) Her physical examination from that date showed normal musculature in the left hand with good palmar abduction, full range of motion, grossly intact strength, diminished sensation throughout the fingers, and positive Tinel's and Durkin's compression tests. (*Id.* at 246.) NP Woods observed no tenderness along the surgical site in the right hand with full range of motion in the digits,

---

[5] As currently applicable here, medically acceptable sources are noted to include the following: licensed physicians; licensed or certified psychologists; licensed optometrists; licensed podiatrists; and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). Although recent revisions to the CFR have added some additional medical providers as treating sources, such alternations did not take effect until March 27, 2017.

[6] Although recent revisions to the CFR have eliminated the treating physician's rule, such changes were effective as of March 27, 2017, and do not apply to decisions issued prior to that date.

13

good palmar abduction, good finger abduction and adduction, and continued parasthesias throughout the fingers. (*Id*.) Plaintiff correctly points out that neither the ALJ nor the Appeals Council appear to discuss this opinion or indicate what degree of evidentiary weight was afforded to it in the course of making the RFC determination. (Dkt. No. 9, at 8 [Pl. Mem. of Law].) However, contrary to Plaintiff's assertions, careful consideration of the evidence reveals this omission to be harmless because there is no indication that NP Woods' opinion suggested limitations greater than those included in the RFC assessment.

Various courts have found that failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the ultimate outcome. *See Cottrell v. Colvin*, 206 F. Supp. 3d 804, 810 (W.D.N.Y. 2016) (noting that an error is considered harmless where proper consideration of the physician's opinion would not change the outcome of the claim) (citing *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010)); *Camarata*, 2015 WL 4598811, at *16 (denying the request for remand because application of the correct legal standard would not change the outcome); *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009) (finding harmless error where the ALJ improperly discounted the treating physician's opinion, but still included the opined limitations from that opinion in the RFC, so remand would serve no purpose); *see also Blabac v. Comm'r of Soc. Sec.*, No. 3:08-CV-0849, 2009 WL 5167650, at *9 (N.D.N.Y. Dec. 18, 2009) (collecting cases which indicate harmless error where the opinions that the ALJ failed to weigh either did not conflict with the ALJ's findings or written consideration of the opinions would not have changed the outcome of the ALJ's decision).

Plaintiff's argument that NP Woods' opinion would prevent the performance of frequent handling as included in the RFC assessment is not a reasonable assessment of the evidence. As

Defendant notes, NP Woods' opinion is ambiguous as to what precisely Plaintiff is limited to doing with his hands as a result of these percentages, but, assuming NP Woods meant to opine that Plaintiff had limitations related to his abilities to handle and finger for the percentages identified, this opinion still would not conflict with the RFC assessment. While Plaintiff correctly notes that "frequent" is defined by the Agency as anywhere between one-third to two-thirds of the time, he does not explain how NP Woods' somewhat vague opinion is inconsistent with that range. *See* SSR 83-14, 1983 WL 31254, at *2. The 50 percent impairment NP Woods opined for plaintiff's right hand is squarely within this range and therefore in no way suggests an inability to perform frequent manipulative activities. Plaintiff appears to assume that NP Woods' indication that Plaintiff had a "25% impairment" in his left hand means he can only use that hand 25 percent of the workday, but the use of the term "impairment" rather than "ability" in the opinion suggests the opposite; rather, NP Woods appears to be opining that Plaintiff retains the ability to use his left hand at 75 percent of normal functioning, a limitation which also would not be inherently inconsistent with an ability to perform manipulative activities frequently with that hand.

Additionally, although Plaintiff argues that this error is harmful because two of the jobs identified by the vocational expert require frequent handling, Plaintiff ignores the fact that, even assuming, *arguendo*, that NP Wood's restrictions limited Plaintiff to less-than-frequent handling, there would still be a significant number of jobs Plaintiff could perform, as the identified job of level clerk requires only occasional (defined as existing up to one-third of the time) handling and fingering, and the vocational expert testified there were "about 60,000 of these jobs nationally." (T. 40); *see also Rosa v. Colvin,* No. 3:12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. Mar. 27, 2015) ("'Courts have generally held that what constitutes a 'significant number' is fairly

minimal.'") (quoting *Fox v. Comm'r of Soc. Sec.,* No. 6.02-CV-1160, 2009 WL 367628, at *3 (N.D.N.Y. Feb. 13, 2009)); *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229-31 (N.D.N.Y. 2015) (collecting cases in which the specific number of occupations in the regional and national economy provided by the vocational experts were or were not held to be a 'significant number'). Consequently, it does not appear that NP Woods' opinion would in any way change the outcome of Plaintiff's claim, and any error the Agency made in failing to explicitly discuss or weigh this opinion was therefore harmless at best. *See Cottrell*, 206 F. Supp. 3d at 810; *Camarata*, 2015 WL 4598811, at *16; *Ryan*, 650 F. Supp. 2d at 217.

For all of the above reasons, the Agency did not commit harmful error in failing to explicitly discuss or weigh the opinion from NP Woods, and remand is not warranted on this basis.

## IV. Conclusion

**ACCORDINGLY**, for the reasons stated herein, it is hereby

**ORDERED**, that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**; and it is

**ORDERED**, that the Clerk of the Court serve this Memorandum-Decision and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: June 20, 2017
Albany, New York

_Christian F. Hummel_
Christian F. Hummel
U.S. Magistrate Judge